Daniel v. Daniel.

DANIEL v. DANIEL.

PRACTICE: *Sureties on injunction bonds: Judgment against.*
It is error to render judgment upon the dissolution of an injunction, against the sureties in the injunction bond, but the judgment will not be reversed upon the appeal of the principal alone.

APPEAL from *Ashley* Circuit Court in Chancery.

Hon. T. F. SORRELLS, Circuit Judge.

*S. P. Hughes*, for appellant:

Argues that upon the facts and testimony, appellant was entitled to relief against a fraud perpetrated on her.

SMITH, J. From the confused mass of contradictory testimony in this case,, we gather that William Daniel, of North Carolina, in the year 1859 or 1860, purchased two quarter sections of land in Ashley County, for prices amounting in the aggregate to $6,400; that he placed his brother Robert, who was in indigent circumstances, in

charge of said plantation and the slaves upon it, as his overseer; and that at the close of the war, there remained a purchase debt hanging over the place of some $3,000 or more; that this debt was paid off out of the rents and profits of the farm, the payment for one quarter section having been completed in 1868, and a deed taken in the name of Thomas L. Daniel, by direction of his father William, and the payment for the other quarter having been completed in 1870, and a deed made to Julia Daniel, by direction of her husband Robert; that Robert Daniel died in 1872, and that in 1874 William Daniel visited this State and induced his brother's widow to execute to Thomas L. a quit-claim deed for all of her interest in the lands, and that she and her son Joseph then accepted from William Daniel, as the agent of Thomas L., a favorable lease for three years of the lands.

These are almost the only undisputed facts in the case.

This bill was filed in 1877 by Julia Daniel against William and Thomas L. Daniel, to cancel her deed and to restrain the collection of rents, and the prosecution of any action for the possession of the land. It alleges that the deed was procured through the fraud, misrepresentations, oppression and threats of William Daniel, she being then in feeble health, and her mind impaired by disease; and that the land was conveyed to her pursuant to a parol agreement made between the brothers in 1865, by the terms of which Robert was to complete the payments on the lands and to receive one quarter for his share.

The answers denied the making of any such verbal contract, or that the deed of Julia was executed under circumstances of fraud or intimidation, or that she was laboring under any mental or physical disability. They averred that the relations between the brothers from 1865 to 1869, were those of landlord and tenant, and that Robert, by

direction of William, applied the rents to the removal of the incumbrances upon the lands, and that Robert wrongfully, and without the knowledge or consent of the defendants, took the deed for one quarter in the name of his wife. They further alleged that the brothers had a settlement of accounts in 1869, when Robert was found indebted to William in the sum of $752, after giving him credit for all payments upon the land, and that William then sold him the half section of land for $4,500, giving him a bond for title and taking his notes for the purchase-money and the balance due upon account, payable in four equal annual installments.

Upon the hearing the court below dismissed the bill.

We are by no means satisfied that such a contract as that set up in the bill was made in 1865, between the brothers. There is no pretense of any note or memorandum in writing of the agreement. And although we should not permit the perpetration of a fraud on the part of William Daniel by his refusal to perform his part of a verbal agreement which had been fully complied with by his brother, yet it must be a clear case to warrant us in depriving a man of his land without his assent manifested by some writing.

Upon the main point, the procuring of the deed of relinquishment by the plaintiff by means of fraud or undue influence—the burden of proof was upon the plaintiff and she has failed to make out such a case as would justify us in reversing the decree. The particular artifice relied upon as avoiding the deed was, that William Daniel falsely and fraudulently represented to his brother's widow that he held a conveyance of the land from Robert, and that he could and would dispossess her if she did not yield to his demand. William says that the papers which he exhibited to her, were her husband's notes, and an acknowl-

edgement signed by Robert that the lands had been paid
for with William's money. So far from having acted
oppressively, he manifested a spirit of fairness by advis-
ing her to take the advice of counsel upon her rights in
the premises. She sent her son Joseph, a sprightly youth
of eigtheen or twenty years, to the county seat to consult
her lawyer, Mr. Van Gilder. William Daniel and his
nephew Joseph went to Hamburg in company, and on the
road William proposed to give him and his mother a three
years' lease, free of rent for the first year, and at half rates
for the other two years, if his mother would abandon her
claim. Mr. Van Gilder, after a conference with these par-
ties and an inspection of the papers held by William,
advised Joseph and his mother to make the compromise.
A deed was prepared, which Joseph carried back, and
which his mother afterwards executed; William, in the
meanwhile, remaining in Hamburg, and apparently having
no further interview with Mrs. Daniel, and not being present
when the deed was signed. Upon the delivery of the deed
William Daniel seems to have regarded all matters in dif-.
ference as finally adjusted, and, in the presence of his law-
yer, A. W. Files, and of Joseph Daniel, destroyed the
notes of Robert Daniel, his acknowledgment above men-
tioned, and all letters and papers relating to the business.

In all this we see no fraud or imposition. Mrs. Daniel
was capable of acting for herself. She had recently recov-
ered from a serious illness, but there is no reason to suppose
that her mind was affected. She acted with deliberation,
and upon legal advice. There was no duress—no attempt
to influence her action by improper means; for the declara-
tion by William that, if she did not renounce her claim, he
should proceed to enforce his son's rights by suit in the
courts, can not be considered as an improper pressure.

What the rights of Robert Daniel's heirs may be, under

his existing contract to purchase the land, it is unncessary to decide, as they are not parties to this suit.

PRACTICE.    The court below, upon the dissolution of the injunction, Judgment against assessed the plaintiff's damages at $500, that sum having sureties in injunction been agreed upon as the value of the rents for the years bonds. 1877, 1878 and 1879, and proceeded to render judgment against the sureties as well as the principal.   So far as the principal is concerned, this assessment is authorized by *section 3482 of Gantt's Digest.*   And the amount of it is conclusive upon the sureties.   But we are not aware of any statute which authorizes the rendition of judgment against the sureties, they not being parties to the suit.    *Clayton v. Martin, 31 Ark., 217; Bailey v. Gibson, 29 ib., 472.*

But we will not reverse the decree for an error committed against the sureties who did not appeal.    *Mann v. The State, 37 Ark., 405.*

As to the appellant, the decree must be affirmed.